# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

          Plaintiff,

    v.                          **Case No. 14-CR-229**

SARAH E.K. LAUX,

          Defendant.

# REPORT & RECOMMENDATION AND ORDER

On December 2, 2014, the grand jury in this district returned a thirty-three count indictment against Sarah E.K. Laux. (ECF No. 1.) The indictment charges Laux with two counts of bank fraud, nine counts of wire fraud, twenty counts of money laundering, one count of mail fraud, and one count of tax evasion. (ECF No. 1.) On February 23, 2015, Laux filed six pretrial motions. (ECF Nos. 13, 14, 15, 16, 17, 18.) The government has responded (ECF No. 26), and Laux has replied (ECF No. 27).

The following facts are alleged in the indictment and are accepted as true for purposes of evaluating its legal sufficiency. *United States v. Moore*, 563 F.3d 583, 586 (7th Cir. 2009). On June 13, 1960, Carleen Guenther established an irrevocable trust that named herself as the initial beneficiary and her three children as the secondary

beneficiaries. (ECF No. 1, ¶¶ 6-7.) Between August 9, 2005 and September 30, 2012, Associated Trust Company, N.A. served as trustee of the trust. (ECF No. 1, ¶ 8.) Associated Trust was a wholly owned subsidiary of Associated Bank, N.A. (ECF No. 1, ¶ 9.) As trustee, Associated Trust was responsible for carrying out the terms of the trust, investing its assets, and defending it. (ECF No. 1, ¶ 10.) Pursuant to the trust's terms, Associated Trust was required to distribute the trust's net income to Guenther. (ECF No. 1, ¶ 11.) Additionally, Associated Trust was required to distribute the principal to the extent Associated Trust deemed necessary for Guenther's living expenses. (ECF No. 1, ¶ 12.)

Around 2008 or 2009, Guenther retained Laux, a Wisconsin licensed attorney, to provide estate planning advice and soon after gave Laux power of attorney over all of Guenther's personal checking and investment accounts at Associated Bank. (ECF No. 1, ¶ 13.) In 2011, Guenther asked Laux to arrange the purchase of an assisted-living condominium. (ECF No. 1, ¶ 14.) But Guenther's health deteriorated and as of November 2011 she no longer intended to purchase the condominium. (ECF No. 1, ¶ 17(a).)

Nevertheless, Laux still represented to Associated Trust that Guenther wanted to purchase the property. (ECF No. 1, ¶ 17-18.) As the subject of Count 1, on December 7, 2011, Associated Trust distributed $200,000 to Guenther's checking account so that Laux could make an endowment payment to the assistant living facility. (ECF No. 1, ¶ 17(c).)

As the subject of Count 2, on December 12, 2011, Associated Trust distributed another $250,000 to Guenther's checking account so that Laux could purchase the condominium. (ECF No. 1, ¶ 17(f).) Laux never purchased the condominium. (ECF No. 1, ¶ 17.) Instead, she caused Associated Bank to transfer the funds to bogus checking accounts that she controlled and then spent a portion of the money on personal expenses, including the purchase of residential real estate and a life insurance business. (ECF No. 1, ¶ 17.)

## I.    Motion to Dismiss Counts 1 and 2

Laux moves to dismiss Counts 1 and 2 of the indictment (ECF No. 13), which allege that she "knowingly executed [a] scheme to defraud financial institutions" in violation of 18 U.S.C. § 1344(1). (ECF No 1, ¶ 18.) Laux raises three grounds for dismissing these counts.[1] She claims that (a) the indictment fails to sufficiently allege that she acted with intent to defraud a financial institution, (b) the indictment fails to sufficiently allege that she executed a scheme, and (c) the counts are multiplicitous.

### A.    Intent to Defraud

Laux argues that Counts 1 and 2 do not sufficiently allege that she acted with the "intent to defraud a financial institution" (ECF No. 13 at 2-4), which is an essential element of a violation of 18 U.S.C. § 1344(1), *Loughrin v. United States*, 134 S. Ct. 2384,

---

[1] Laux raised a fourth ground to dismiss Counts 1 and 2, arguing that the indictment fails to allege that the deposits of Associated Bank, N.A. or Associated Trust Company, N.A. were insured by the Federal Deposit Insurance Corporation, which, she claimed, is an essential element under 18 U.S.C. § 1344. (ECF No. 13 at 5-7.) Laux withdrew this argument following the government's response. (ECF No. 27 at 5-6.)

2390 (2014). The indictment alleges that Laux "knowingly devised and carried out a scheme to defraud Associated Trust…; Associated Bank…; and others." (ECF No. 1, ¶ 5.) Although it tracks the statutory language of 18 U.S.C. § 1344(1), the indictment does not specifically allege that Laux acted with the intent to defraud Associated Trust and Associated Bank. Laux contends that Counts 1 and 2 are deficient because they fail to use the words "intent to defraud." Alternatively, she claims the intent element cannot be inferred from the facts alleged in the indictment.

Federal Rule of Criminal Procedure 7(c)(1) requires that an indictment be "a plain, concise, and definite written statement of the essential facts constituting the offense charged…." An indictment is constitutionally sufficient if it "(1) states all the elements of the crime charged; (2) informs the defendant of the nature of the charge, enabling the defendant to prepare a defense; and (3) enables the defendant to plead the judgment as a bar to later prosecution of the same offense." *United States v. Abu-Shawish*, 507 F.3d 550, 553 (7th Cir. 2007) (quoting *United States v. Allender*, 62 F.3d 909, 914 (7th Cir. 1995)). Indictments are to be read in a practical manner, as a whole, and "to include facts that are necessarily implied," *United States v. Palumbo Bros.*, 145 F.3d 850, 860 (7th Cir. 1998), not in a hypertechnical manner. *See United States v. Moore*, 563 F.3d 583, 585 (7th Cir. 2009).

"In determining whether an essential element of the crime has been omitted from the charge, courts will not insist that any particular word or phrase be used. The

element may be alleged in any form which substantially states it." *United States v. Harvey*, 484 F.3d 453, 457 (7th Cir. 2007) (ellipses omitted) (quoting *United States v. Weatherspoon*, 581 F.2d 595, 600 (7th Cir. 1978)). "[I]t is not necessary to spell out each element, so long as each element is present in context.'" *United States v. Westmoreland*, 240 F.3d 618, 633 (7th Cir. 2001) (brackets omitted) (quoting *United States v. Smith*, 223 F.3d 554, 571 (7th Cir. 2000)).

The court reviews the indictment to determine whether it alleges, in any form, that Laux acted with an intent to defraud Associated Trust and Associated Bank. *See United States v. Garcia-Geronimo*, 663 F.2d 738, 743 (7th Cir. 1981) (finding "[t]he allegation of criminal intent [was] necessarily implied from the other words used in the indictment."). Intent to defraud means the defendant "act[ed] willfully and with specific intent to deceive or cheat, usually for the purpose of getting financial gain for one's self or causing financial loss to another." *United States v. Moede*, 48 F.3d 238, 241 (7th Cir. 1995) (citing *United States v. Sims*, 895 F.2d 326, 329 (7th Cir.1990)). One way an indictment may sufficiently allege an intent to defraud a financial institution is by alleging facts that show that "the defendant intended to cause actual or potential loss to the financial institution." *Id.*; *see also United States v. Longfellow*, 43 F.3d 318, 323 (7th Cir. 1994) ("risk of loss, not just loss itself, supports a conviction").

According to Laux, because the funds belonged to Guenther, only Guenther— and not the financial institutions—risked a financial loss. (ECF No. 13 at 4.) Therefore,

the indictment fails to allege that she acted with an intent to defraud Associated Trust and Associated Bank. The court disagrees.

The indictment alleges that Laux misled Associated Trust and Associated Bank regarding her intended use for the trust's funds and that the financial institutions relied on those misrepresentations when they transferred funds into an account controlled by Laux. (*See* ECF No. 1, ¶ 17.) By causing Associated Trust and Associated Bank to lose custody of Guenther's trust funds for a purpose that proved to be inconsistent with the purposes of the trust (*see* ECF No. 1, ¶ 11-12), Laux exposed them to potential risk of civil liability. *See, e.g., Moede*, 48 F.3d at 242. Moreover, the scheme jeopardized Associated Trust's and Associated Bank's business reputation by causing them to release funds that they were obligated to protect. (*See* ECF No. 1, ¶ 10.) As such, the indictment sufficiently alleges that Laux acted with the intent to defraud Associated Trust and Associated Bank.

### B. Separate Executions

Laux further contends that Counts 1 and 2 should be dismissed because they do not allege separate schemes. "[T]he bank fraud statute 'punishes each execution of a fraudulent scheme rather than each act in furtherance of such a scheme.'" *United States v. Longfellow*, 43 F.3d 318, 323 (7th Cir. 1994) (quoting *United States v. Molinaro*, 11 F.3d 853, 859 (9th Cir. 1993)). "Conduct generally qualifies as an 'execution' rather than an 'act in furtherance' when it is chronologically and substantively distinct and subjects the

victim to additional risk of loss." *United States v. Peugh*, 675 F.3d 736, 740 (7th Cir. 2012)

*rev'd on other grounds*, 133 S. Ct. 2072 (2013) (citing *Longfellow*, 43 F.3d at 323-24). The

same scheme may be executed multiple times. *Longfellow*, 43 F.3d at 323. In deciding

what parts of a scheme are executions, courts have applied an "interrelatedness"

standard, taking into consideration, among other things, "[t]he ultimate goal of the

scheme, the nature of the scheme, the benefits intended, the interdependence of the acts,

the number of parties involved...." *Id.*

    Count 1 of the indictment alleges that on December 7, 2011, Laux caused

Associated Trust to distribute $200,000 from the trust to Guenther's Associated Bank

checking account by misrepresenting that she would use the funds to make an

endowment payment to Newcastle Place for Guenther. (ECF No. 1, ¶ 17(c).) Count 2

makes a similar allegation with respect to the transfer of $250,000 on December 12, 2011.

(ECF No. 1, ¶ 17(d).) According to Laux, although these misrepresentations may have

been in furtherance of a scheme, they were not made in execution of the scheme. As a

result, Counts 1 and 2 should be dismissed.

    Although Counts 1 and 2 incorporate some of the same alleged facts, there are

also chronological and substantive distinctions between the two misrepresentations. For

starters, the misrepresentations occurred on different dates: the misrepresentation

identified in Count 1 was made on December 7, 2011, while the one identified in Count

2 was made on December 12, 2011. (ECF No. 1, ¶ 17(c), (f).) In addition, each count

deals with distinct sums of money, $200,000 and $250,000, respectively. (ECF No. 1, ¶¶ 17(c), (f).) Finally, the disbursements were not dependent upon one another, as Associated Trust could have made one payment but not the other. Given these distinctions, and consistent with the requirement that § 1344 is to be construed broadly, *Longfellow*, 43 F.3d at 323, the court finds that Counts 1 and 2 each allege a separate execution of a bank fraud scheme.

### C.      Multiplicity

Finally, Laux claims that Counts 1 and 2 are multiplicitous and therefore should be dismissed. (ECF No. 13 at 9-11.) Multiplicity is the charging of a single offense in more than one count of an indictment. *United States v. Hassebrock*, 663 F.3d 906, 916 (7th Cir. 2011) (citing *Allender*, 62 F.3d at 912). "Multiplicity in an indictment exposes a defendant to the threat of receiving multiple punishments for the same offense in violation of the Double Jeopardy Clause of the Fifth Amendment." *United States v. Starks*, 472 F.3d 466, 469 (7th Cir. 2006). In order to determine whether a given indictment contains multiplicitous counts, the court examines the applicable criminal statute to identify what constitutes the allowable "unit of prosecution," i.e., the minimum amount of activity for which criminal liability attaches. *Allender*, 62 F.3d at 912. As stated above, in bank fraud cases, each "execution" of the scheme to defraud, rather than a mere act in furtherance of the scheme, constitutes a separate violation of 18 U.S.C. §1344. *Id.*

Laux's assertion that Counts 1 and 2 are multiplicitous is simply another way of articulating the argument just rejected. For the same reasons that led the court to conclude that Counts 1 and 2 allege separate executions of the bank fraud scheme, the counts are not multiplicitous.

The court recommends that Laux's Motion to Dismiss Counts 1 and 2 (ECF No. 13) be denied.

## II.     Motion to Dismiss Counts 3-11 and 25

Laux moves to dismiss Counts 3 through 11, which charge her with wire fraud in violation of 18 U.S.C. § 1343, and Count 25, which charges her with mail fraud in violation of 18 U.S.C. § 1341. (ECF No. 14.) Her argument with regard to these counts is the same as her first argument with respect to her motion to dismiss Counts 1 and 2, namely, that the indictment fails to specifically allege that she acted with the intent to defraud.

Because the relevant portions of the mail and wire fraud statutes are identical, "cases construing the mail fraud statute, 18 U.S.C. § 1341, are applicable to the wire fraud statute, 18 U.S.C. § 1343." *United States v. White*, 737 F.3d 1121, 1129 n.4 (7th Cir. 2013) *cert. denied sub nom. Helton v. United States*, 134 S. Ct. 2717, 189 L. Ed. 2d 754 (2014) (brackets and citation omitted). Like the crime of bank fraud in Counts 1 and 2, an essential element of the wire and mail fraud crimes is that the defendant acted with the "intent to defraud." *United States v. Durham*, 766 F.3d 672, 678 (7th Cir. 2014).

In *United States v. Freeman*, 619 F.2d 1112, 1117 (5th Cir. 1980), the court held that an "indictment need not specifically charge, but the government must prove, 'a specific intent to commit fraud[]'...." (quoting *United States v. Kent*, 608 F.2d 542, 545 n.2 (5th Cir. 1979)); *accord United States v. Sutton United States v. Sutton*, No. CRIMA5:08-CR-40(HL), 2009 WL 383400, at *8 (M.D. Ga. Feb. 11, 2009). Likewise, in *United States v. Taylor*, 73 Fed. Appx. 972, 973 (9th Cir. 2003) (unpublished), the court held that an indictment sufficiently alleged the intent element by citing the applicable statute, 18 U.S.C. § 1341, and alleging that the defendant "knowingly devised a scheme to defraud." *Accord United States v. Hunter*, 13 F. Supp. 2d 586, 589 (D. Vt. 1998).

Here, rather than using the conclusory phrase "Laux acted with the intent to defraud," the indictment went one step further and listed a plethora of allegations (presumed true for this motion) that establish that Laux acted with the intent to defraud. *See United States v. Howard*, 619 F.3d 723, 727 (7th Cir. 2010) (holding that intent to defraud may be established through circumstantial evidence or inferences from the scheme). It alleges that Laux created false financial records, opened checking accounts in the name of bogus entities, and mislabeled checks. (*See, e.g.*, ECF No. 1, ¶¶ 17(g), 24(e), 41(e), 42(i).) She converted to her own use funds belonging to clients. (ECF No. 1, ¶ 22(c).) She lied to clients, telling them that she had used their money to purchase goods and services for them when in fact she had not. (ECF No. 1, ¶¶ 22(d), 39.) She used money belonging to clients to buy real estate and an insurance business for her

own personal use and to pay her personal bills and bills of her law firm. (ECF No. 1, ¶ 23.) She made numerous false statements to Associated Bank, Associated Trust, and others as part of her scheme to defraud her clients. (ECF No. 1, ¶ 24.)

If those allegations were not sufficiently clear that Laux had acted with the intent to defraud, both the mail and wire fraud charges specifically allege that she was acting intentionally. As alleged in the wire fraud charges, Laux represented that she was going to use the funds for her clients' interest "when, in fact, Laux *intended* to convert that money to her own use." (ECF No. 1, ¶ 24(a) (emphasis added).) The mail fraud charge similarly alleges that, "in fact, Laux *intended* to convert a substantial portion of their money to her own use." (ECF No. 1, ¶ 39 (emphasis added).) Counts 3 through 11 and 25 conclude by citing the wire and mail statutes that Laux allegedly violated. (ECF No. 1, ¶¶ 25, 43.)

In short, it is not possible to read the indictment and be unclear as to whether the government is charging Laux with having acted with an intent to defraud her clients and the financial institutions. Can the government prove she acted with the intent to defraud? That will be resolved at trial. But the indictment is clear that she is charged with having acted with the requisite intent to defraud.

The court recommends that Defendant's Motion to Dismiss Counts 3 through 11 and 25 (ECF No. 27) be denied.

### III.    Motion to Strike Surplusage

Next, Laux moves to strike surplusage in the indictment. (ECF No. 15.) Federal Rule of Criminal Procedure 7(d) provides that "[u]pon the defendant's motion, the court may strike surplusage from the indictment or information." Fed. R. Crim. P. 7(d). Surplusage should be stricken only if "it is *clear* that the allegations are not relevant to the charge and are inflammatory and prejudicial." *United States v. O'Connor*, 656 F.3d 630, 645 (7th Cir. 2011) (emphasis added) (quoting *United States v. Peters*, 435 F.3d 746, 753 (7th Cir. 2006)).

Counts 1 and 2 of the indictment allege that Laux knowingly devised and carried out a scheme to defraud Associated Trust, Associated Bank, Guenther, and "others." (ECF No. 1, ¶¶ 5, 16-18.) Laux seeks to strike the allegations in Counts 1 and 2 that she defrauded Guenther and others. (ECF No. 15.) She claims that it is irrelevant to the charge of bank fraud that Guenther or others were defrauded, and argues that it is "misleading and potentially confusing to a jury to include Carleen Guenther and unnamed 'others' as persons defrauded in Counts 1 and 2." (ECF No. 15 at 2-3.) The government responds by saying that Guenther and others "were every bit as much victims as were [the financial institutions] of the bank fraud scheme alleged in Counts 1 and 2." (ECF No. 26 at 32.) As such, the allegations referencing them as victims of the bank fraud is not surplusage. And even if they are surplusage, the government argues, they are not irrelevant or inflammatory surplusage. (ECF No. 26 at 33.)

A defendant violates 18 U.S.C. § 1344 only by defrauding a financial institution. *See United States v. Davis*, 989 F.2d 244, 247 (7th Cir. 1993) (purpose of bank fraud statute is "to protect the federal government's interest as an insurer of financial institutions."). Defrauding Guenther and others (the government's brief variously suggests that "others" refers to Guenther's children and/or heirs) would not constitute bank fraud. Alleging that Guenther and others are victims of Laux's alleged bank fraud scheme could confuse and ultimately prejudice the jury. The concern is that the jury might believe that the bank fraud statute, 18 U.S.C. § 1344, is violated if Guenther or others were defrauded. As such, the court will grant the Defendant's Motion to Strike Surplusage (ECF No. 15) as to Counts 1 and 2. The following words shall be stricken from Counts 1 and 2 in the indictment: "Carleen Vogal Guenther ('Carleen Guenther'), who was the beneficiary of the trust; and others" on page two, paragraph five; "Carleen Guenther, and others" on page three, paragraph sixteen and also on page four, paragraph seventeen; "as well as others" on page seven, paragraph eighteen.

Laux also seeks to strike references in Counts 3 through 11 that she defrauded Associated Trust, Associated Bank, and others. (ECF No. 15 at 3.) Unlike bank fraud, though, a violation of the wire fraud statute does not require that a specific entity or person be defrauded. *See Monostra*, 125 F.3d at 187. Thus, allegations that Laux defrauded the financial institutions are not surplusage as they may be relevant to Counts 3 through 11. *United States v. Miserendino*, No. 05-CR-311, 2006 WL 1117828, at *1

(E.D. Wis. Apr. 26, 2006) ("legally relevant information is not surplusage."). Therefore, the court will deny Laux's Motion to Strike Surplusage (ECF No. 15) as to Counts 3 through 11.

Alternatively, Laux moves for a bill of particulars, requesting that the government identify who the "others" are that Laux allegedly defrauded as part of Counts 3 through 11. (ECF No. 15 at 4.) The government did not address Laux's request in its response brief. The indictment must inform Laux of the nature of the charges against her. *See United States v. Blanchard,* 542 F.3d 1133, 1140 (7th Cir. 2008). Broadly alleging that she has also defrauded "others" leaves room for speculation as to who and how many other alleged victims exist. Preparing an adequate defense in the face of such ambiguity would be difficult. Consequently, the court will order the government to provide a bill of particulars identifying the "others" as referenced in Counts 3 through 11 of the indictment.

## IV.    Motion for Bill of Particulars

Laux moves for a Bill of Particulars requiring the government to identify the names of unindicted co-conspirators. (ECF No. 16.) The government responds by stating that it is "presently unaware of any such coconspirators" and asks that the motion be denied as moot. (ECF No. 26 at 33.) Laux replies that the trial is still several months off and the government's position might change. As such, her motion should be

granted and the government ordered to disclose any co-conspirators that it identifies between now and the time of trial. (ECF No. 27 at 9.)

Federal Rule of Criminal Procedure 7(f) permits, "in conjunction with the issuance of an indictment, for the filing of a bill of particulars—a more specific expression of the activities defendant is accused of having engaged in which are illegal." *United States v. Canino,* 949 F.2d 928, 949 (7th Cir. 1991). The purpose of a bill of particulars is to inform a defendant of the nature of the charges against her so that she will have a sufficient opportunity to prepare for trial. *Blanchard,* 542 F.3d at 1140. The trial court has discretion to grant or deny a request for a bill of particulars. *Canino,* 949 F.2d at 949.

The fact that the government is currently unaware of a co-conspirator does not mean it will not subsequently change its position on that issue. The court will grant Laux's Motion for a Bill of Particulars (ECF No. 16). The government shall promptly disclose to Laux any co-conspirator it identifies any time between now and the time of trial.

## V.     Motions for Notice of Certain Evidence and Disclosure of Summary Evidence

Finally, Laux requests in two motions that the court set a deadline for the government to produce certain evidence, which she asserts would ensure an adequate time to prepare for trial. (ECF Nos. 17, 18.) Specifically, Laux requests that the government be ordered to produce at least sixty days before trial expert reports and any

uncharged misconduct evidence that the government intends to use at trial. (ECF No. 17.) Laux also requests that the government be ordered to disclose at least thirty days before trial the contents of any summary document or exhibit which it intends to use at trial. (ECF No. 18.) The government acknowledges its obligation to produce both sets of evidence and states that it will be provided "sufficiently before trial to enable Laux to prepare for trial and to contest the admissibility of any such evidence." (ECF No. 26 at 34.) It does not articulate more specifically what "sufficiently before trial" means.

Because the government has not indicated that the deadlines proposed by Laux are unreasonable or would be problematic, the court will grant Laux's Motion for Notice of Certain Evidence (ECF No. 17) and Motion for Early Disclosure of Summary Evidence (ECF No. 18).

**IT IS THEREFORE RECOMMENDED** that Defendant's Motion to Dismiss Counts 1 and 2 (ECF No. 13) be **denied**.

**IT IS FURTHER RECOMMENDED** that Defendant's Motion to Dismiss Counts 3 through 11 and 25 (ECF No. 14) be **denied**.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Strike Surplusage (ECF No. 15) is **granted** as to Counts 1 and 2 and is **denied** as to as to Counts 3 through 11. The following words shall be stricken from Counts 1 and 2 in the indictment: "Carleen Vogal Guenther ('Carleen Guenther'), who was the beneficiary of the trust; and others" on page two, paragraph five; "Carleen Guenther, and others" on page

three, paragraph sixteen; "Carleen Guenther, and others" on page four, paragraph seventeen; "as well as others" on page seven, paragraph eighteen.

**IT IS FURTHER ORDERED** the government shall provide a bill of particulars on or before **April 29, 2015** identifying who the "others" are that are referenced in Counts 3 through 11 of the indictment.

**IT IS FURTHER ORDERED** Defendant's Motion for a Bill of Particulars (ECF No. 16) is **granted**. The government shall promptly disclose to Defendant any co-conspirator it identifies from now through the date of the trial.

**IT IS FURTHER ORDERED** Defendant's Motion for Notice of Certain Evidence (ECF No. 17) is **granted**. The government shall give notice of the following evidence at least sixty days before trial: (1) A written summary of the nature of any expert witnesses' opinions, the bases and reasons for these opinions, and the witnesses' qualifications, as required by Fed. R. Crim. P. 16(a)(1)(G); and, (2) any uncharged misconduct evidence that the government intends to use, as required by Fed. R. Evid. 404(b).

**IT IS FURTHER ORDERED** Defendant's Motion for Early Disclosure of Summary Evidence (ECF No. 18) is **granted**. The government shall disclose at least thirty days before trial the contents of any summary document or exhibit, pursuant to Fed. R. Evid. 1006, which the government intends to use at trial in this matter.

Your attention is directed to 28 U.S.C. § 636(b)(1)(A), (B) and (C) and Fed. R. Crim. P. 59(a) and (b)(2) whereby written objections to any order or recommendation herein or part thereof may be filed within fourteen days of the date of service of this recommendation and order or prior to the Final Pretrial Conference, whichever is earlier. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Failure to file a timely objection with the district court shall result in a waiver of a party's right to appeal.

Dated at Milwaukee, Wisconsin this 24th day of April, 2015.

WILLIAM E. DUFFIN
U.S. Magistrate Judge